# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>SCOTT MICHAEL HARRY,<br><br>  Defendant. | No. 17-cr-1017-LTS<br><br>**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS** |

_____

## *I.     INTRODUCTION*

The matter now before me is defendant's Motion to Suppress evidence allegedly seized in violation of the Fourth Amendment to the United States Constitution. (Doc. 20). The grand jury charged defendant in a one-count indictment with Possession with Intent to Distribute Methamphetamine in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 851. (Doc. 2). The charge arose from evidence found during a traffic stop of the vehicle defendant was driving on February 10, 2017. Defendant argues that the traffic stop was not supported by either probable cause or reasonable suspicion that criminal activity was afoot; defendant does not challenge any events that occurred subsequent to the actual stop of the vehicle.

The Honorable Leonard T. Strand, Chief United States District Judge, referred this motion to me for a Report and Recommendation. Upon defendant's request, I held an evidentiary hearing on August 3, 2017. For the reasons that follow, I respectfully recommend that the Court deny defendant's Motion to Suppress.

## II. FINDINGS OF FACT

Dubuque Drug Task Force investigator Adam Williams began working with a confidential informant ("CI") in the summer of 2016, after the CI had been arrested. At that time, Investigator Williams spoke with the CI who told him, among other things, that Scott Harry was involved with transporting methamphetamine into the Dubuque area. Investigator Williams was familiar with both defendant and Dennis Thul and their physical descriptions.[1] After the CI had been released from jail in later 2016, he made contact with Investigator Williams to let Investigator Williams know he was out of jail.

On February 10, 2017, at approximately 11:00 AM, Investigator Williams received a text message from the CI stating that "Scott" had left Dubuque around 4:00 AM to "pick up," that the CI believed "Scott" would be driving approximately four hours each way for the meeting, and that the CI expected "Scott" to return to Dubuque around noon. The CI further indicated that "Scott" would be riding with Dennis Thul in a newer white, single-cab pickup truck that was registered to Dennis Thul's father, Dale Thul. Investigator Williams also filed a report detailing this information. This was the first tip the CI provided to Investigator Williams. At approximately 12:24 PM that same day, the CI informed Investigator Williams by text message that defendant was expected to return to Dubuque in about one hour. The text message indicated that defendant and his companion were then driving and were roughly one hour's drive away from Dubuque.

Based on this information, law enforcement officers identified two different pickup trucks registered to Dale Thul, one of which matched the description given by the CI. Officers set up surveillance on roads leading to Dubuque. Investigator Williams subsequently observed a truck matching the description of the subject truck travelling on

---

[1] Note that both defendant and Dennis Thul are white males.

2

Highway 151 toward Dubuque. Investigator Williams, who was driving an unmarked police vehicle, pulled in behind the truck and ultimately passed it. Although he could not look at the faces of the occupants, Investigator Williams otherwise concluded that this was the truck driven by defendant based on the CI's description and Investigator Williams' familiarity with defendant and Thul. Investigator Williams called Dubuque County Deputy Daniel Kearney, whom Investigator Williams knew was also patrolling Highway 151, to inform him of the sighting.

A short while later, Deputy Kearney, a K9 officer who was traveling southbound on Highway 151 (away from Dubuque) observed the subject pickup truck travelling northbound on Highway 151. Deputy Kearney used his radar gun to record the pickup truck travelling 75 miles per hour in a 65 mile per hour zone. Deputy Kearney routinely calibrated his radar gun himself using two different methods: at the beginning of each shift, Deputy Kearney verified the accuracy of the radar gun by comparing the speed recorded by the radar gun against a second, objective measurement of speed, and at the beginning of each work week, Deputy Kearney used tuning forks to ascertain the accuracy of the radar. Additionally, the radar gun was calibrated by the manufacturer on an annual basis; the radar was up to date on its manufacturer-calibration as of February 10, 2017. Deputy Kearney further testified that based on his own visual observations and significant experience as a seasoned law enforcement officer tasked with enforcing traffic laws that it was his belief that defendant was travelling in excess of the speed limit. The radar's recorded speed served to confirm Deputy Kearney's visual observations.

Deputy Kearney crossed the median and pulled in behind the pickup truck. When Deputy Kearney caught up with the pickup truck and reached a safe location he then activated the lights on his patrol vehicle and pulled the white pickup truck over. Deputy Kearney was also familiar with defendant and Thul from past contact. When he approached the pickup truck from the passenger side and made contact with the

occupants, he confirmed defendant's identity as the driver and that of Thul as passenger. During discussions with Deputy Kearney, defendant estimated that he was travelling 70 miles per hour in the 65 mile per hour zone.

Within a few minutes of stopping the pickup truck, Deputy Kearney retrieved his K-9 unit and the dog alerted on the truck. Following the alert, law enforcement officers searched the pickup truck. Officers located approximately 691 grams of methamphetamine in the bed of the truck.

I found that the testimony of Investigator Williams and Deputy Kearney during the evidentiary hearing was credible.

## III. ANALYSIS

Defendant argues that the Court should suppress the evidence obtained as a result of the traffic stop because Deputy Kearney did not have probable cause or a reasonable suspicion to stop the vehicle. (Doc. 20-1, at 2). Defendant does not challenge events occurring after the stop itself, such as the duration of the stop or the validity of the dog search (Doc. 20-1); therefore, it is unnecessary to analyze any issue that does not pertain to the lawfulness of the actual traffic stop itself. The lawfulness of the traffic stop can be considered according to whether: 1) Deputy Kearney had probable cause to believe that defendant was travelling in excess of the speed limit; and 2) the CI's information supported a reasonable suspicion that defendant was engaged in drug trafficking sufficient to provide a basis for an investigatory stop. I will address each of these issues in turn.

### A. Defendant's Excessive Speed Provided Probable Cause of Criminal Activity

The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." U.S. CONST. amend. IV. To pass constitutional muster, "a traffic stop must be supported by reasonable suspicion or probable cause." *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012) (internal quotation marks and citation omitted). However, "reasonable suspicion must arise before a search or seizure is actually effected." *United States v. Swindle*, 407 F.3d 562, 568 (2d Cir. 2005) (citing *Florida v. J.L.*, 529 U.S. 266, 271 (2000) (The "reasonableness of official suspicion must be measured by what the officers knew before they conducted their search.")). "Any traffic violation, however minor, provides probable cause for a traffic stop. An otherwise constitutional traffic stop is not invalidated by the fact that it was mere pretext for a narcotics search." *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008) (internal quotations marks and citations omitted). Travelling in excess of the speed limit is a clear violation of the law.

It is well established that the temporary detention of individuals during a traffic stop constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Thus, the probable cause or belief that probable cause exists for the stop must arise before the actual stop takes place. Although defendant did admit to speeding in his conversation with Deputy Kearney, this has no bearing on whether probable cause or a belief based on probable cause existed at the time Deputy Kearney pulled defendant over because Deputy Kearney did not have this information prior to effecting the stop. Defendant's admission to speeding, however, is relevant in my assessment of the credibility of Deputy Kearney's testimony.

However, I determine that Deputy Kearney's assessment of defendant's speed, both visually and in utilizing the radar gun, created probable cause for Deputy Kearney

5

to effect the traffic stop. Deputy Kearney's testimonial credibility appeared intact and supported both the accuracy of the radar gun and his own reasonable belief that defendant was speeding. The radar detector was calibrated frequently using a variety of methods, Deputy Kearney was an experienced law enforcement officer who was well acquainted with his radar device—as opposed to a novice officer who may be unfamiliar with his equipment—and Deputy Kearney's own visual assessment of defendant's speed supported Deputy Kearney's belief that defendant was travelling at an excessive rate of speed. Based on the traffic violation alone, probable cause existed for Deputy Kearney to stop the vehicle. *Wright*, 512 F.3d at 471.

During the hearing, defendant conducted a thorough cross examination of Deputy Kearney regarding the reliability of his radar gun. Notably, although there was scant evidence developed through this cross examination to suggest that the radar device was inaccurate, it would be of no consequence if the radar were inaccurate. So long as Deputy Kearney reasonably believed his radar was accurate, then he had probable cause to believe that defendant was speeding, even it if turned out that the radar was inaccurate. *Whren*, 517 U.S. at 819 ("[T]he District Court found that the officers had probable cause to *believe* that petitioners had violated the traffic code. That rendered the stop reasonable under the Fourth Amendment . . . ." (emphasis added)). Through Deputy Kearney's testimony and the pleadings, I have determined did Deputy Kearney did have probable cause to house such a belief, based on Deputy Kearney's belief in the radar's accuracy and his own experience in visually identifying speeding vehicles.

Based on the foregoing factors, I find that Deputy Kearney did have probable cause to believe that defendant was speeding and that probable cause existed for Deputy Kearney to stop the vehicle.

### B. The CI's Information Provided Reasonable Suspicion of Criminal Activity

As previously stated, "a traffic stop must be supported by reasonable suspicion or probable cause." *Hollins*, 685 F.3d at 706 (internal quotation marks and citation omitted). "A law enforcement officer has reasonable suspicion when the officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." (*Id.* (internal quotation marks and citation omitted)). "Reasonable suspicion may be based on an informant's tip where the tip is both reliable and corroborated." *United States v. Bell*, 480. F.3d 860, 863 (8th Cir. 2007) (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972); *United States v. Jacobsen*, 391 F.3d 904, 906 (8th Cir. 2004)). When "'an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity.'" *United States v. Manes*, 603 F.3d 451, 456 (8th Cir. 2010) (quoting *Alabama v. White*, 496 U.S. 325, 331 (1990)). "The reasonableness of such an inference is bolstered if the tip is corroborated not only by matching an identity or description, but also by accurately describing a suspect's future behavior." (*Id.* (internal citations omitted)). The Court must consider the totality of the circumstances to determine whether reasonable suspicion existed to effect a traffic stop. (*Id.*).

Here, the totality of the circumstances indicate that Deputy Kearney had reasonable suspicion to stop the vehicle in which defendant was travelling. Although this was the first tip provided by the CI, and, thus, the CI had no track record of reliability, the CI provided adequate identifying information to permit law enforcement officers to independently corroborate enough information in the tip to create a reasonable suspicion. The CI provided the approximate time defendant would be travelling to Dubuque, that Dennis Thul would be accompanying defendant, and that the two would be travelling in a late model white, single-cab pickup truck registered to Dale Thul. Upon this

7

information, law enforcement officers were able to ascertain that Dale Thul did, in fact, have two white pickup trucks registered in his name, one of which matched the description provided by the CI. Law enforcement then observed one of those two trucks travelling north on Highway 151 toward Dubuque and Investigator Williams subsequently observed two white males riding in the late model white, single-cab pickup truck. It was not until after making these observations that Deputy Kearney stopped the truck.

It is true that the CI incorrectly identified which of the two men, defendant or Dennis Thul, would be driving the vehicle. It is easy enough, however, for parties to change driver. Moreover, while driving alongside and in front of the vehicle, Investigator Williams was only able to observe two white males in the truck and was not able to make out their faces without raising suspicion. Therefore, at the time of the stop, law enforcement officials had corroborated several pieces of information that the CI had provided and had not identified any inaccurate information. As a result, the accuracy of the CI's tip to this point supported the inference that the remainder of the CI's information (that defendant was transporting methamphetamine) was likely also accurate. Based on these considerations and the information provided by the CI, "a [person] of reasonable caution" would believe that an investigatory stop would be appropriate based on the belief that a crime was underway. *Manes*, 603 F.3d at 456 (quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1969) (alteration in original)).

For the foregoing reasons, I find that law enforcement officers did have a reasonable suspicion to believe that criminal activity was afoot and that, therefore, the traffic stop was constitutional under the Fourth Amendment.

8

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend that the Court find: 1) defendant's excessive rate of speed provided probable cause for the traffic stop; and 2) the CI's information provided a reasonable suspicion that criminal activity was underway, thereby permitting the traffic stop. Therefore, I respectfully recommend that the Court **deny** defendant's Motion to Suppress. (Doc. 20).

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CRIM. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CRIM. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED t**his 8th day of August, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa